UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORRAINE HAYES,

        Plaintiff,        Case No.  08-10179

v.        District Judge George Caram Steeh
        Magistrate Judge R. Steven Whalen

CITY OF DETROIT, KIMBERLY LANGFORD,
SOLOMON BILLS, and PARTHENA GOREE,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

Before the Court are Defendant Kimberly Langford's *Motion for Judgment on the Pleadings* [Docket #10] and Defendant City of Detroit's *Motion for Judgment on the Pleadings* [Docket #11], filed pursuant to Fed. R. Civ. P. 12(c), which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend the following:

    1). Defendant Langford's *Motion for Judgment on the Pleadings* [Docket #10] should be GRANTED.

    2). Defendant City of Detroit's *Motion for Judgment on the Pleadings* [Docket #11]   should be GRANTED IN PART AND DENIED IN PART, granting the motion to dismiss claims regarding Plaintiff's physical injuries, but denying as to allegations of psychiatric or emotional damages.

**I. Factual Background**

Plaintiff Lorraine Hayes, a Detroit, Michigan resident, filed suit on January 11, 2008 pursuant to 42 U.S.C. §1983, alleging violations of her due process rights under the Fourteenth Amendment by Defendant Langford, an Emergency Service Operator ("ESO"),

-1-

the City of Detroit, and Detroit Police Officers Bills and Goree.

The Complaint contains the following allegations: On January 12, 2005, Plaintiff, then located at 4554 Field Street, Detroit, Michigan, was shot multiple times by acquaintance Adrian King. *Complaint* at ¶¶19-22. Plaintiff called 9-1-1 to request emergency medical assistance at approximately 9:28 p.m., informing ESO Langford that she had been shot. *Id.* at ¶¶23, 25. Defendant Langford assured Plaintiff that "emergency response was on its way" to the Field Street address. *Id.* at ¶25. However, during the course of the conversation, Langford "repeatedly insulted" Plaintiff and "failed to summon emergency" personnel. *Id.* at ¶28. Plaintiff made a second 911 call at approximately 9:53 p.m., again speaking to Defendant Langford. *Id.* at ¶32. Defendant Langford again failed to send emergency assistance and subjected Plaintiff to "offensive, intentional, extreme, and outrageous conduct." *Id.* at ¶34.

Plaintiff, apparently contending that Defendant Langford failed to impart the seriousness of her condition to police dispatch, concedes that the ESO nonetheless prepared a computer aided dispatch sheet, including Plaintiff's location, which was forwarded to police dispatch. *Id.* at ¶¶36-37. The responding Detroit Police officers, Defendants Goree and Bills, drove to the 4554 Field Street address, but did not attempt to approach the house or inform dispatch that they experienced difficulty locating Plaintiff before leaving the location. *Id.* at ¶¶44-45. Plaintiff alleges that after her second 9-1-1 call to Langford, "[u]pon information and belief," Defendant officers ignored a dispatch call directing them to return to the Field Street address. *Id.* ¶¶48-50. Following a third 9-1-1 call placed by Plaintiff's son, EMS finally arrived, transporting Plaintiff to Detroit Receiving Hospital. *Id.* at ¶49, *Docket #13* at 1. As a result of Plaintiff's injuries, she experienced "complete paralysis at or around the T-4 level," mental anguish, and extreme emotional injuries. *Id.* at

¶51, *Docket #13* at 2. Plaintiff alleges violations of 42 U.S.C. §§1983, 1988 by all Defendants and gross negligence and/or intentional malfeasance by Defendant Goree and Bills only.

## II. STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is analyzed under the standards for dismissal stated in Rule 12(b)(6).[1] *Scheid v. Fanny Farmer Candy Shops, Inc.* 859 F.2d 434, 436 (C.A.6 (6th Cir. 1988). Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In *Bell Atlantic Corp. V. Twombley*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court set forth what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. The Court held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level. . .on the assumption that all the allegations in the complaint are true." *Id.*,

---

[1] Defendants properly brought motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) rather than a motion to dismiss under Rule 12(b)(6). "[A] motion under Rule 12(b)(6) could not properly lie" because Rule 12(b) requires that "[a] motion making any of these defenses shall be made before pleading." *Scheid v. Fanny Farmer Candy Shops, Inc.* 859 F.2d 434, 436 (6th Cir. 1988); Fed.R.Civ.P. 12(b). Defendants City of Detroit and Kimberly Langford filed answers to the Complaint on March 3, 2008. *Docket #8, 9.*

127 S.Ct. at 1964-65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is *plausible* on its face." *Twombly*, at 1974 (emphasis added).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

### III. ANALYSIS
### A. Defendant Langford

#### 1. *Res Judicata*

Defendant Langford argues first that the present action is barred by claim preclusion, noting that Plaintiff's previously filed state claim pertaining to the same events was dismissed on July 26, 2007. *Docket #10,* Exhibit C. (Wayne County Circuit Court, Case No. 06-610484).

Application of the doctrine of *res judicata* in Michigan requires that (1) the first action be decided on its merits, (2) the matter being litigated in the second case was or could have been resolved in the first case, and (3) both actions involved the same parties or their privies. *ABB Paint Finishing, Inc. v. National Union Fire Ins.,* 223 Mich.App. 559, 562, 567 N.W.2d 456 (1997). "The test for determining whether two claims are identical for res judicata purposes is whether the same facts or evidence are essential to the maintenance of the two claims," *Huggett v. Dep't of Natural Resources,* 232 Mich.App. 188, 197, 590 N.W.2d 747 (1998), not whether the grounds asserted for relief are the same. *Jones v. State Farm Ins. Co.,* 202 Mich.App. 393, 401, 509 N.W.2d 829 (1993), *mod'f on other grounds, Patterson v. Kleiman,* 447 Mich. 429, 433 n. 3, 526 N.W.2d 879 (1994).

At the time Defendant Langford filed the present motion, Plaintiff's claims clearly fell within the Michigan test for *res judicata*. The summary disposition of the Wayne County Circuit action constituted a judgment on the merits, notwithstanding the ensuing appeal. *See Washington v. Sinai Hosp. of Greater Detroit,* 478 Mich. 412, 418-419, 733 N.W.2d 755, 759 (2007). Second, the issues she seeks to raise in the present complaint could have been raised in state court. Finally, this case involves precisely the same parties.

However, on December 8, 2008, the Michigan Court of Appeals reversed in part the Circuit Court's dismissal of Plaintiff's state claims against Defendant Langford, remanding the case for further proceedings on Plaintiff's claim of intentional infliction of emotional distress. *Hayes v. Langford,* 2008 WL 5158896, *7 (Mich.App. 2008). The court, in upholding the dismissal of the gross negligence claim, found as follows regarding Defendant Langford:

> "[D]efendant's grossly negligent conduct was not "[t]he one most immediate, efficient, and direct cause" preceding plaintiff's physical injuries. The unrefuted evidence in this case ultimately established that defendant properly input plaintiff's complaint and address into the 911 computer system, that police and emergency responders were timely dispatched to plaintiff's residence, but that the police failed to locate 4554 Field Street and left the area before finding plaintiff's home. This unrefuted evidence showed that the police-and not defendant-were responsible for the significant delay in reaching plaintiff's home and in providing medical to plaintiff."

*Id.* at * 2. Insofar as Plaintiff alleges that Defendant Langford's actions resulted in physical injury, under both the doctrine *res judicata* as well as collateral estoppel the Court of Appeals' factual determination bars her present claim. *San Remo Hotel, L.P. v. City & County of San Francisco,* 545 U.S. 323, 336, 125 S.Ct. 2491, 2501, 162 L.Ed.2d 315 (2005).[2]

In contrast, the Appeals Court reversed the summary disposition on the Plaintiff's claim of intentional infliction of emotional distress ("IIED"):

> "At a minimum, there remained genuine issues of material fact in this case

---

[2] Cross-applications for leave to appeal are pending in the Michigan Supreme Court. If the Supreme Court were to reverse the Court of Appeals on the gross negligence claim, and find a question of fact as to whether there was a nexus between Langford's actions and Plaintiff's physical injuries, then res judicata would not bar any of Plaintiff's federal claims. As discussed *infra*, however, Plaintiff's due process claim based on physical injury would fail under *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

> concerning whether defendant abused her position as a 911 operator to insult and berate plaintiff and to threaten plaintiff with possible legal repercussions for making a false 911 call. We conclude that there also remained a genuine issue of material fact concerning whether defendant disregarded any peculiar susceptibility to emotional distress which may have been created by plaintiff's despair and immediately life-threatening medical condition at the time the 911 calls were placed. In light of defendant's position of authority as a 911 operator, and considering defendant's actual knowledge of plaintiff's life-threatening medical condition, we must conclude that defendant's comments, remarks, and indignations likely would have aroused an average person's resentment against defendant, and would have led at least some reasonable individuals to exclaim, "Outrageous!"

*Id.* at *7. Thus, the Court of Appeals found in favor of the Plaintiff in terms of the facts at issue. As such, *res judicata* does not bar Plaintiff's allegation, supported by the affidavit of a psychiatrist, that she suffered a "serious psychiatric illness" as a result of Defendant Langford's conduct. *Id.* at *7.

## 2. Substantive Due Process

### a. Physical Injuries

Assuming, for the sake of argument, that the Michigan Supreme Court rules in Plaintiff's favor, and that res judicata does not bar her claim that a delay in summoning medical or police help, occasioned by Defendant Langford's inaction, resulted in her physical injuries, the case is governed by *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), and its progeny.

*DeShaney* held that the Due Process Clause does not "require [ ] the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.*, 489 U.S. at 195. In *DeShaney*, the State first took temporary custody of a young child, but later returned him to his abusive father, who beat him to the extent that he suffered severe and irreversible brain damage. As tragic as this result was, and as grossly incompetent and negligent as the state authorities appear to have been, the Supreme Court declined to find a

due process violation, stating, "that the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all." *Id.* at 201.

In so holding, the Court implied that there could be a due process violation if state action made an individual more vulnerable to harm. This has come to be known as the "state-created danger" exception to *DeShaney*,[3] and was described by the Sixth Circuit in *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998) as applicable where the state "cause[s] or greatly increase[s] the risk of harm to its citizens...through its own affirmative acts." A state-created danger claim has three elements:

> " '(1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff.' " *Jones v. Reynolds,* 438 F.3d 685, 690 (6th Cir.2006) (quoting *Cartwright v. City of Marine City,* 336 F.3d 487, 493 (6th Cir.2003)).

While the first prong of the state-created danger exception, set forth in *Jones*, requires that the state actor "either created or increased the risk" of exposure to the acts of a third party, *Ewolski v. City of Brunswick,* 287 F.3d 492, 509 (6th Cir. 2002) notes more generally that "state officials may violate the Due Process Clause when their *affirmative actions* directly increase the vulnerability of citizens to danger or otherwise place citizens in harm's way." (Emphasis added). *See also Butera v. District of Columbia,* 235 F.3d 637, 648-49 (D.C.Cir.2001)("a duty to protect can arise in a noncustodial setting if the state does anything to render an individual more vulnerable to danger.").

---

[3] The "state created danger" exception is different from the "special relationship" exception to the general rule of *DeShaney*. The prototypical special relationship, which creates a duty for the state to protect, is where an individual is in police or state custody.

Plaintiff's claim fails under the first prong of *Jones*. Langford's failure to act, that is, her failure to promptly summon help, is not an "affirmative act" that will trigger the state-created danger exception to *DeShaney*. *See Koulta v. Merciez*, 477 F.3d 442 (6th Cir. 2007). In *May v. Franklin County Com'rs* 437 F.3d 579, 586 (6th Cir. 2006), the Sixth Circuit found that there was no "affirmative act" that would trigger the *Kallstrom* exception where the 9-1-1 operator and the police defendants seriously bobbled an emergency call in a domestic violence situation that ended in a murder. Despite finding the facts "deeply troubling," the Court held:

> "The inability of the Franklin County authorities to prevent Kirk's murder despite her numerous 911 calls to their emergency call center is deeply troubling. May has produced persuasive evidence that appellees failed to follow their established procedure for domestic violence calls when fielding Kirk's first 911 call, and that appellees may also have underestimated the urgency of Kirk's situation during the second 911 call. Had appellees attempted to obtain more information from Kirk during her phone calls to 911, it is possible that their attempt to intervene would have been more aggressive, and the tragic events of that night might have unfolded differently. While appellees' actions in response to Kirk's calls for assistance may not be faultless, none of appellees' actions directly increased Kirk's vulnerability to danger or placed her in harm's way. *Ewolski,* 287 F.3d at 509. May has been unable to show that any of appellees' actions constitute affirmative acts as *Kallstrom* requires to sustain her state-created-danger claim."

The facts alleged in the present case are likewise disturbing. However, there being no "affirmative act," *DeShaney* controls, and there is no substantive due process violation based on the Plaintiff's physical injuries.

**b. Psychological and Emotional Injuries**

Plaintiff also argues that Langford's behavior toward her–which the Court of Appeals described as "outrageous"– directly caused ongoing psychological and emotional trauma. This claim is appropriately analyzed under *County of Sacramento v. Lewis,* 523

U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), rather than *DeShaney* and *Kallstrom*. *Jones v. Reynolds, supra*, 438 F.3d at 695 (*citing County of Sacramento v. Lewis*), notes that allegations regarding harm caused *directly* by state officers may be analyzed pursuant to the *Lewis* "shocks the conscience" standard rather than the "state-created danger" test found in *Kallstrom,* ("Had the officers organized or participated in this race, the issue would cease to turn on whether they were responsible for harm caused by a private actor and would turn instead on whether they had caused the harm themselves") *Jones,* at 695.

Of course, the Appeals Court finding regarding the state claim of IIED is not dispositive of whether Langford violated Plaintiff's substantive due process rights. "'The due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm.'" *Ewolski, supra,* 287 F.3d at 510 (*citing County of Sacramento v. Lewis)* "[T]he Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Lewis,* 523 U.S. at 848, 118 S.Ct. at 1718. "[T]he § 1983 plaintiff [must] show that the challenged action was so 'egregious' that it can be said to be 'arbitrary in the constitutional sense.'" *Ewolski*, 287 F.3d at 510 *(citing Lewis* at 846, 118 S.Ct. at 1716). "The Fourteenth Amendment protects only against abuse of executive power which 'shocks the conscience.'" *Id.* (*citing Lewis,* at 846, 118 S.Ct. at 1716).

While "negligently inflicted harm is categorically beneath the threshold of constitutional due process . . . . at the other end of the culpability spectrum . . . conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis,* at 449, 118 S.Ct. at 1718. The plaintiff need not show that "it was...the ultimate purpose of the government actors to

-10-

harm the plaintiff," but that the defendants acted "with full appreciation of . . . the brutality of their acts." *Id.* at 850, 1718, fn9; *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). "Whether the point of the conscience shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but 'less than intentional conduct, such as recklessness or 'gross negligence' . . . is a matter for closer calls."*Id.* (*citing Daniels v. Williams,* 474 U.S., at 334, 106 S.Ct., at 666, fn3, 88 L.Ed.2d 662 (1986)). "Deliberate indifference that shocks in one environment may not be so patently egregious in another." *Id.* at 850, 118 S.Ct. at 1718. Determining the presence of a due process violation requires an appraisal of "the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial." 850, 1719 (*citing Betts v. Brady,* 316 U.S. 455, 462, 62 S.Ct. 1252, 1256, 86 L.Ed. 1595 (1942)).

Even assuming that the urgent circumstances surrounding the 9-1-1 would require a showing that Langford *intended* injury (rather than acting with gross negligence or recklessness), Defendant has as yet provided no evidence to refute the Complaint's allegation that her conduct was "extreme and outrageous." *Complaint.* at ¶34. *Wallin v. Norman,* 317 F.3d 558, 561 (6th Cir. 2003); *Lindsay v. Yates,* 498 F.3d 434, 437, fn. 5 (6th Cir.2007). At this point, in the context of a pre-discovery Rule 12 ( c ) motion, a finding that Plaintiff is unable to sustain a substantive due process violation would be premature.[4]

In finding that Plaintiff has pled conduct that is both outrageous and arbitrary, the

---

[4] Although the state trial judge granted summary disposition based on Michigan requirements of proximate cause, she did state that the transcript of the 9-1-1 call "depict[s] a horrific insensitivity to human suffering on Ms. Langford's part."

-11-

Court is mindful of the strong sentiment against finding a substantive due process violation "outside the realm of *physical* abuse." *Braley v. City of Pontiac,* 906 F.2d 220, 226 (6th Cir.1990) (emphasis added) (finding the "'shock the conscience' standard, fuzzy under the best of circumstances").  However, *Braley,* in which a motorist was jailed after a heated verbal exchange with a police officer, does not state unequivocally that substantive due process violations are *always* limited to excessive force cases, and indeed,  among the cases citing *Braley* for the proposition that substantive due process claims must include excessive force, there is not one approaching the egregious circumstances alleged here. *See Mansfield Apartment Owners Ass'n v. City of Mansfield*  988 F.2d 1469, 1478 (6th Cir. 1993)(no substantive due process violation found by City in holding landlords liable for delinquent water bills of tenants); *Cassady v. Tackett,* 938 F.2d 693, 698(6th Cir. 1991)("we are reluctant to apply the 'shocks the conscience' standard" where the administrator of jail forced to barricade herself in an office for 45 minutes after jailer threatened to kill "does not concern physical abuse," but nonetheless finding Fourth Amendment violations); *Kawecki ex rel. Marlowe v. County of Macomb,* 2008 WL 205241,*24 (E.D. Mich. 2008)(Rosen, J.) (no substantive due process violations  in misappropriation of funds by county official); *Choate's Air Conditioning & Heating, Inc. v. Light, Gas & Water Division of the City of Memphis,* 16 F. App'x 323, 329, 2001 WL 856957, *5 (6th Cir. 2001)(violation of easement agreement did not amount to a substantive due process violation). *See also Wedgewood Limited Partnership I v. Township of Liberty,* 456 F.Supp.2d 904, 933-34 n. 35 (S.D.Ohio 2006); *Miller v. City of Columbus,* 920 F.Supp. 807, 819 (S.D.Ohio 1996) (no substantive due process violations implicated in zoning or property disputes).

The Sixth Circuit's "reluctance" to find a due process violation in the absence of physical force does not translate into a categorical holding that such a violation could never

-12-

occur, no matter how outrageous the defendant's conduct. Indeed, at oral argument on this motion, counsel for Defendant, although declining to characterize Langford's conduct as "outrageous" or "conscience-shocking," conceded that, at least hypothetically, a defendant's conduct could be extreme enough to sustain a due process claim in the absence of a physical injury.

I therefore find that, for purposes of a Rule 12 ( c ) motion, Plaintiff has properly pled a substantive due process violation under *County of Sacramento v. Lewis*, based on allegations of psychological and emotional injury caused by conduct on the part of Defendant Langford that could be found to "shock the conscience." Nevertheless, as discussed below, Langford is protected by qualified immunity.

### 3. Qualified Immunity

Defendant Langford argues that even assuming that a constitutional violation occurred, she is entitled to dismissal on the basis of qualified immunity. Under *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), a state official who is performing a discretionary function is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful.[5] Because as discussed above, *Lewis* can be

---

[5] In *Pearson v. Callahan*, __ S.Ct. __, 2009 WL 128768 (2009), decided on January 21, 2009, the Supreme Court held that the two-step sequential analysis set forth in *Saucier* (first, determine whether there was a constitutional violation, and second, determine whether the constitutional right was clearly established) is no longer mandatory. Nevertheless, *Pearson* observed that the *Saucier* protocol, while not required, remains useful in particular cases:

> "On reconsidering the procedure required in *Saucier,* we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of

extended to the present allegations of wholly arbitrary and possibly intentional conduct resulting in psychological injuries, Plaintiff has stated a substantive due process violation. However, because by no stretch of the imagination can I find that the right was clearly established, Langford is entitled to qualified immunity.

To determine whether a constitutional right is "clearly established," a reviewing court looks first to decisions of the United States Supreme Court, then to its own decisions and those of other courts within the circuit, and finally, to decisions of other circuits. *Williams v. Kentucky,* 24 F.3d 1526, 1533 (6th Cir.1994).

First, while Langford's alleged verbal conduct was conscience-shocking, *Lewis,* involving an accidental death resulting from a high speed police chase, is nonetheless factually distinguishable.  One would not expect the ESO to infer from *Lewis* that her purely verbal abuse of Plaintiff amounted to a constitutional violation. Second, in this Circuit, *Braley* and its progeny have expressed a strong disinclination to finding a substantive due process violation  in the absence of either physical injury or a threat of physical injury or violence.

 Third,  case law for other Circuits fails to support the conclusion that Plaintiff's rights in the present factual scenario were clearly established.  In *White v. Rochford,* 592 F.2d 381, 383-383 (7th Cir.1979), the court  "held that police abandonment of an arrestee's children on

---

appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."

*Pearson*, slip op. at 9.  The Court sees no advantage here in reordering the *Saucier* sequence.

a highway late on a cold night shocked the conscience and deprived them of due process rights." *Cassady, supra*, 938 F.2d 693, 698 592 F.2d at 383-84.  Nonetheless, the Sixth Circuit noted that "[e]ven assuming that we still see merit in the Seventh Circuit's decision in *White* that behavior other than physical violence may 'shock the conscience,' that case concerns far different circumstances of police treatment of private citizens in the course of law enforcement. *White* thus would not establish a due process violation in the present case." *Id.* (*citing White,* 592 F.2d at 384).  While *Cassady* allows for the *possibility* that substantive due process violations may occur absent physical violence, the right is certainly not clearly established.  Thus, Langford is entitled to qualified immunity.

### B.  Defendant City of Detroit

As discussed above,  Plaintiff's claim that Langford's actions were responsible for her failure to obtain timely medical treatment is barred under both *res judicata* and *DeShaney*. However, the municipal claim of deliberate indifference, alleging that Langford's verbal abuse occurred as a result of the City's failure to train the ESO, is adequate to survive the present motion.[6] *Lewis* at 523 U.S. 833, 850, 118 S.Ct. 1708, 1718; *Canton v. Harris,* 489 U.S. 378, 388-389, 109 S.Ct. 1197, 1204-1205, 103 L.Ed.2d 412 (1989).  *See Frontera v. City of Columbus,* 2008 WL 203026, *6 (S.D. Ohio 2008)(Whether "[Defendants'] actions were taken pursuant to an official municipal policy of some nature are matters for discovery and proof").  Further, the fact that an individual defendant–in this case, Langford–is entitled to qualified immunity does not preclude municipal liability.  *See Barber v. Salem*, 953 F.2d 232, 238 (6th Cir. 1992) ("It is possible that city officials may be entitled to qualified immunity for certain actions while the municipality may nevertheless be held liable for the

---

[6]Defendants Bills and Goree were not parties to either motion.   The Court makes no findings regarding their alleged conduct.

same actions."); *Scott v. Clay County, Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000) ("If the legal requirements of *municipal* or *county* civil rights liability are satisfied, qualified immunity will *not* automatically excuse a municipality or county from constitutional liability, even where the municipal or county actors were personally absolved by qualified immunity, *if* those agents *in fact* had invaded the plaintiff's constitutional rights.") (emphasis in original).

Accordingly, dismissal of claims against Defendant City regarding Plaintiff's psychiatric and emotional damages is premature at best.

### IV.  CONCLUSION

For these reasons, I recommend the following:

1).  Defendant LANGFORD's Motion for Judgment on the Pleadings [Docket #10] should be GRANTED.

2) Defendant CITY OF DETROIT's Motion for Judgment on the Pleadings [Docket #11] should be GRANTED IN PART AND DENIED IN PART, granting the motion to dismiss the claims regarding Plaintiff's physical injuries, but denying as to allegations of psychiatric and emotional damages.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.CT. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v.*

*Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

     Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                              S/R. Steven Whalen
                                              R. STEVEN WHALEN
                                              UNITED STATES MAGISTRATE JUDGE

Dated: February 10, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 10, 2009.

                                              S/Gina Wilson
                                              Judicial Assistant